## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

EDITH J. BEAUCHAMP,
DR. VIRGINIA WALCOTT BEAUCHAMP,
and
K.C.B. and A.J.B., *two minor children of Edith Beauchamp,*

      Plaintiffs,

      v.

STATE OF MARYLAND,
PRINCE GEORGE'S COUNTY
      DEPARTMENT OF SOCIAL
      SERVICES,
MARYLAND DEPARTMENT OF HEALTH
      AND MENTAL HYGIENE,
CITY OF GREENBELT, MARYLAND,
THEODORE (TED) DALLAS, *Secretary of Human Resources,*
JOSHUA M. SHARFSTEIN, M.D., *Secretary of Health and Mental Hygiene,*
GLORIA L. BROWN, *Director of Prince George's County Department of Social Services,*
MICHAEL MCLAUGHLIN, *City Manager, City of Greenbelt,*
DOUGLAS F. GANSLER, *Attorney General of Maryland,*
MARYLAND DEPARTMENT OF HUMAN
      RESOURCES,
DAVID E. BELLER, *Principal Counsel, Maryland Department of Human Resources,*
SHIREEN BLAIR, and
SANDRA I. BARNES,

      Defendants.

Civil Action No. TDC-14-2667

## MEMORANDUM OPINION

In 2009, Plaintiff Edith J. Beauchamp became the subject of a child protective services investigation and was found responsible for child neglect. She has since been listed in a state registry of perpetrators of child neglect or abuse. Beauchamp now files suit alleging violations of her constitutional rights. Listed as Defendants in this action are the State of Maryland; the Maryland Department of Health and Mental Hygiene ("MDHMH"); Joshua M. Sharsftein, M.D., the Maryland Secretary of Health and Mental Hygiene; the Maryland Department of Human Resources ("MDHR"); Theodore Dallas, the Maryland Secretary of Human Resources; the Prince George's County Department of Social Services ("PGCDSS"); Gloria L. Brown, Director of the Prince George's County Department of Social Services; Douglas F. Gansler, the Attorney General of Maryland; Sandra I. Barnes, Assistant Attorney General of Maryland; and David E. Beller, Principal Counsel of the Maryland Department of Human Resources (collectively, the "State Defendants").[1] Beauchamp has also filed suit against the City of Greenbelt, Maryland; Michael McLaughlin, the City Manager of Greenbelt, Maryland; and Shireen Blair, a Crisis Counselor for the City of Greenbelt (collectively, the "Greenbelt Defendants").

Currently pending are the State Defendants and the Greenbelt Defendants' Motions to Dismiss. Also pending is Beauchamp's Motion Requesting Additional Time to Respond to Defendants' Recent Filings and Special "Attorney" Access to the Pacer System ("Motion for Leave"); and Motion to Request this Court's Order to Defendants' to Cooperate with Depositions, Requesting a Bench Conference Due to Dispute Over Complying with Discovery,

---

[1] As of the date of this Memorandum Opinion, Samir Malhotra is the current Secretary of Human Resources, Van T. Mitchell is the current Secretary of Health and Mental Hygiene, and Brian E. Frosh is the current Attorney General of Maryland. When a government official is sued in an official capacity and subsequently leaves office, the official's successor is automatically substituted. *See* Fed. R. Civ. P. 25(d). Here, Beauchamp has indicated her intent to pursue claims against the named government officials in their official capacity. *See* Pl.'s Ans. Mot. Two Mots. Dismiss at 7, ECF No. 27. Were this case to continue beyond these Motions, it would appropriate to substitute in the successors of the named government officials.

and Requesting the Court's Assistance or Permission to Issue Summons for Additional Records to Supplement the Complaint ("Motion to Compel").

The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motions to Dismiss are GRANTED. Beauchamp's Motion for Leave is DENIED as to the request to file additional memoranda and DISMISSED AS MOOT as to the request for access to the electronic court filing system. The Motion to Compel is DISMISSED AS MOOT.

## BACKGROUND

Unless otherwise noted, the following facts are presented as alleged in the Complaint and the Notarized Statement and Amended/Supplemental Complaint (the "Amended Complaint"). ECF Nos. 1, 5. This case follows PGCDSS's finding that Beauchamp was responsible for child neglect based on unsuitable living conditions at the home where she lived with her two minor children. *See Beauchamp v. Prince George's Cnty. Dep't of Soc. Servs.*, No. 0523, slip op. at 1 (Md. Ct. Spec. App. Oct. 21, 2013). On September 16, 2009, police discovered the conditions while investigating burglaries in the area. They alerted PGCDSS shortly afterward. On December 12, 2009, after failed attempts to get Beauchamp to improve the conditions, Shamar Rouse, a Child Protective Services investigator, made a finding that Beauchamp was responsible for child neglect, and that she had failed to provide her children with proper care and attention. After conducting a hearing, an administrative law judge ("ALJ") affirmed the findings on June 21, 2010.

On April 18, 2012, the Circuit Court for Prince George's County, Maryland upheld the ALJ's decision. Beauchamp appealed the Prince George's County Circuit Court decision to the Court of Special Appeals of Maryland, where she argued that there was not substantial evidence

of child neglect because her children had not been placed at a substantial risk of harm. She also argued that the State did not properly serve her with the record prior to the hearing, and that the ALJ abused her discretion by limiting Beauchamp's presentation of evidence and refusing to admit as evidence certain materials offered by Beauchamp. On October 12, 2013, the Court of Special Appeals affirmed the circuit court's decision, concluding that substantial evidence supported the finding of child neglect, that the State followed proper procedures in serving Beauchamp with the record, and that the ALJ did not abuse her discretion. *Id.* at 11–15. The Court of Appeals of Maryland denied certiorari on March 24, 2014.

On August 18, 2014, Beauchamp, proceeding *pro se*, filed this action.[2] ECF No. 1. In the present case, Beauchamp disputes that the living conditions for her children were unsuitable or established a substantial risk of harm. She alleges that the children lived with her mother from August to October 2009 while Beauchamp recovered from a knee injury. Beauchamp acknowledges that her house "temporarily was left in a mess" after she injured her knee, but she maintains that the children did not return to the home until she had obtained Rouse's approval. Am. Compl. ¶ 33, ECF No. 5.

Although Beauchamp does not delineate specific causes of actions against Defendants, she asserts three categories of claims. First, she alleges a series of errors in the administrative

---

[2]   The Complaint lists Beauchamp, her mother Dr. Virginia Walcott Beauchamp, and her two minor children as Plaintiffs. The Complaint was signed by Beauchamp only, but a second filing, which the Court construes as an Amended Complaint, was signed by Beauchamp's mother only. Collectively, the pleadings seek redress for actions taken entirely against Beauchamp. The inclusion of Beauchamp's mother and two minor children as plaintiffs, and the manner in which the filings were prepared and submitted, present myriad standing and procedural issues. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (concluding that standing requires plaintiffs in civil cases to have suffered an articulable injury-in-fact); Local Rule 101.1(a) (D. Md. 2014) ("Individuals who are parties in civil cases may only represent themselves."). Because the Court has other legal grounds upon which to dismiss this action and must liberally construe *pro se* filings, the filings in this case will be construed as submitted by Beauchamp alone for the purposes of resolving the pending motions.

and state court proceedings resulting in the finding of child neglect. For example, she alleges that during the state court proceedings, "fraudulent" hearsay evidence was admitted against her. Compl. at 2, ECF No. 1. Specifically, she claims that in 2009, Blair fabricated fraudulent documents and statements that were used in the state proceedings. Beauchamp also alleges that she was not allowed to submit her own evidence, was not properly given copies of the evidence against her, and was not given equal time to present her case. She alleges that Rouse was improperly allowed to testify as an expert witness, even though she had not yet taken her licensing exam. Beauchamp also alleges that Barnes, the Assistant Attorney General who represented the PGCDSS before the Court of Special Appeals, fought to exclude the exculpatory evidence that Beauchamp wanted to present.

Second, Beauchamp alleges that she was falsely arrested by the Prince George's County Sheriff's Department when she was taken to a hospital for an emergency evaluation on August 18, 2011, based on allegations by Blair that Beauchamp had made "eye contact" with Blair outside the government building where Blair worked. Am. Compl. ¶ 21. Court filings, which Beauchamp attached to her memorandum in opposition to the Motions to Dismiss, indicate that on August 17, 2011, both a Petition for Emergency Evaluation and a Petition for Peace Order were filed with the District Court for Prince George's County, Maryland. In the Petition for Emergency Evaluation, the police officer filing the petition stated that Beauchamp "has been writing threatening emails to City officials and researching the history and address of employees," and that Beauchamp "sought out [Blair], entering a rec. facility illegally, and confronting [Blair]." Pl.'s Ans. Mot. Two Mots. Dismiss ("Pl.'s Opp.") Ex. 6, ECF No. 28-6. In the Petition for Peace Order, seeking a form of restraining order against Beauchamp, Blair marked the check boxes for "stalking" and "other: multiple emails to various agencies and

persons maligning Ms. Blair" as bases for the petition. *Id.* at 3. In the section provided for further details, Blair stated that Beauchamp:

> Appeared fully clothed in shower area of [the] pool where Blair was showering and vulnerable and engaged in threatening direct eye contact sustained for several seconds and sent emails over the course of April – August 2011 accusing Ms. Blair of various insane acts against her and demanding retaliatory acts against Blair.... She has threatened me personally by approaching me in my most vulnerable position [while] showering and is accusing me to multiple agencies and persons of malicious absurd acts demanding they retaliate viciously against me.

*Id.*

The Prince George's County District Court found probable cause to believe that Beauchamp "has shown the symptoms of a mental disorder and presents a danger to the life or safety of the evaluee or others" and ordered law enforcement to take Beauchamp to receive an emergency evaluation by a physician. Pl.'s Opp. Ex. 15 at 3, ECF No. 28-15. Also on August 17, the district court granted a temporary peace order against Beauchamp, finding "reasonable grounds to believe" that Beauchamp had placed Blair "in fear of imminent serious bodily harm" and was "likely to commit a prohibited act against [Blair] in the future." Pl.'s Opp. Ex. 6 at 7. After the district court granted the Petition for an Emergency Evaluation, a sheriff's deputy "arrested" Beauchamp and transported her to the hospital, from which she was released "a few hours later." Am. Compl. ¶ 21.

Third, she alleges a constitutional violation because she is listed in the Central Registry for Child Protective Services (the "Registry") as a result of the finding of child neglect, and because there is no means by which to have her name expunged from the registry. Beauchamp asserts that the Registry does not differentiate between cases involving child neglect or child abuse, "does not differentiate between criminal charges or . . . civil matter[s], and is reportable nationwide despite these significant lapses in definition or information." Compl. at 4. She

claims injury from her listing in the Registry because she has been prevented from volunteering in the classroom with her children and serving as a chaperone or driving a carpool for school trips, sports activities, and a church youth group. She also claims that she lost her federal security clearance as a result of the listing.

As relief, Beauchamp seeks an unspecified amount of damages, an injunction ordering a "Federal review" of the Registry and the alleged violation of Beauchamp's rights, and restoration of her "reputation and Federal clearances." *Id.* at 6. She also seeks "Justice Department assistance with a Federal Attorney" to assist Beauchamp to "prosecute this case against the State and the local municipality." *Id.* Beauchamp also requests expungement of her name from the Registry and restoration of her reputation.

## DISCUSSION

### I.    Legal Standards

Defendants move to dismiss for lack of subject matter jurisdiction on the grounds that the *Rooker-Feldman* doctrine precludes this Court from reviewing the state court proceedings. A defendant may by motion seek dismissal of a complaint based on a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When a defendant asserts that the complaint fails to allege facts upon which subject matter jurisdiction can be based, the facts alleged "are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Generally, when considering a motion to dismiss for lack of subject matter jurisdiction, the court "may evaluate the pleadings as evidence on the issue and may consider other evidence in the record without converting the proceeding to one for summary judgment." *Al Shimari v. CACI Premier Tech.,*

*Inc.*, 758 F.3d 516, 531 (4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)) (internal quotation marks omitted).

Defendants also move to dismiss for failure to state a claim on a number of grounds, including Eleventh Amendment immunity, absolute and qualified immunity, and the statute of limitations. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). *Pro se* complaints must be liberally construed and are held to a less stringent standard than documents drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The parties have attached multiple exhibits to their memoranda briefing the Motions. For example, Beauchamp has attached the ALJ's opinion, various letters and emails, hospital records, excerpts of state laws, documentation that she applied for a handicapped parking placard, and pictures of her family. Typically, when deciding a Rule 12(b)(6) motion, the court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because Rule 12(d) requires courts to treat a motion to dismiss as a motion for summary judgment under Rule 56 where matters outside the pleadings are considered and not excluded, Fed. R. Civ. P. 12(d), the Court generally excludes such exhibits from consideration.

8

Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted). Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also Zak*, 780 F.3d at 607 ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201) (internal quotation marks omitted)).

Here, Beauchamp has attached court documents related to Blair's filing of the petitions for an emergency evaluation and a peace order. Beauchamp explicitly relies on them in the Complaint and, having attached them to her memorandum in opposition to the Motions to Dismiss, does not dispute their authenticity. The Court may therefore consider them in assessing the Rule 12(b)(6) motion. *See Zak*, 780 F.3d at 606–07. The Court will also consider, for purposes of establishing the procedural history of Beauchamp's complaints, the opinion of the Maryland Court of Special Appeals and the denial of Beauchamp's petition for a writ of certiorari by the Maryland Court of Appeals, attached to the State Defendants' motion to dismiss,

as public records of the state court proceedings subject to judicial notice.  Fed. R. Evid. 201; *see*

*Lolavar v. de Santibañes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005).

## II.   Immunity of State Defendants

### A.   Eleventh Amendment Immunity

To the extent that the claims are directed against the State of Maryland, MDHMH,

MDHR, and PGCDSS, and against Sharfstein, Dallas, Gansler, Barnes, Beller, and Brown in

their official capacity, those claims are dismissed because these State Defendants are entitled to

Eleventh Amendment immunity.  The Eleventh Amendment provides: "The Judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment immunizes

states, state agencies, state instrumentalities, and state officials sued in their official capacities

from suit by private parties in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*,

465 U.S. 89, 98 (1984); *Bland v. Roberts*, 730 F.3d 368, 389–91 (4th Cir. 2013) (holding that

federal court claims for damages against a state official in his official capacity are barred by the

Eleventh Amendment).  Claims against the State of Maryland are dismissed because it is a state,

and claims against MDHMH and MDHR are dismissed because they are state agencies.

PGCDSS is a unit of MDHR and is also a state agency entitled to immunity under the Eleventh

Amendment.  *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md.

2004) (stating that a local department of social services in Maryland is a state agency); *Walker v.*

*Human Resources*, 842 A.2d 53, 57 (Md. 2004) (stating that a local department of social services

is a unit of the MDHR).  Because Dallas, Sharfstein, Gansler, Barnes, Beller, and Brown are

state officials, any claims against them are dismissed to the extent that they are sued in their

official capacities.  Beauchamp has clarified that all of these state officials are sued in their official capacity only, with the exception of Barnes, who is sued in both her official and individual capacities.  Thus, all claims for damages against Dallas, Sharfstein, Gansler, Beller, and Brown, and against Barnes in her official capacity, are dismissed.[3]

### B.    Absolute Immunity

To the extent that Barnes is sued in her individual capacity, Beauchamp alleges that Barnes, as the attorney representing the PGCDSS in the child neglect proceedings, withheld exculpatory evidence from the tribunals, fought to exclude Beauchamp's evidence, and used false evidence against Beauchamp in the state-court proceedings.  As an attorney or advocate for the government serving in what Beauchamp acknowledged was a "prosecutorial" role, Am. Compl. ¶ 42, Barnes is entitled to absolute immunity for her decisions and actions in connection with the child neglect proceedings. *Springmen v. Williams*, 122 F.3d 211, 214 (4th Cir. 1997); *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 137–38 (4th Cir. 1989).  Thus, the Court dismisses all claims against Barnes in her individual capacity.

### III.    Claims Relating to the Child Neglect Proceedings

With respect to the first category of claims, Beauchamp's allegations of errors associated with the state court child neglect proceedings, Defendants contend that the *Rooker-Feldman* doctrine bars this Court from hearing those claims.  The *Rooker-Feldman* doctrine bars federal courts from reviewing state court judgments. *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim

---

[3] Beauchamp's claim seeking an injunction, which would not be subject to Eleventh Amendment immunity, *see Bland*, 730 F.3d at 390, is addressed below in Part V.

that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). If applicable, the *Rooker-Feldman* doctrine prevents the Court from exercising subject matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 292.

Although Beauchamp argues that she does not seek review of the state court proceedings, but rather seeks only damages for the "failures of the City and the State" to investigate the alleged fraud and deceit by government employees, Pl.'s Opp. at 12, ECF No. 27, her claims of errors associated with the state court proceedings effectively seek appellate review of the state court rulings. Beauchamp raises numerous irregularities with the administrative proceedings, including that fraudulent documents and statements were used in the state proceedings. She raises the same issues here that she previously raised before the Maryland Court of Special Appeals, including that she was not allowed to submit her own evidence, and that she was not given equal time to present her case. She takes issue with the admission of expert testimony and the exclusion of allegedly exculpatory evidence.

Beauchamp also challenges the state court's ultimate determination that she engaged in child neglect and claims injury from that determination. Beauchamp insists that the child neglect finding cannot possibly be true, based on a theory that the children were never removed from the home by PGCDSS. She claims that the state finding of child neglect, which resulted in her placement in the Registry, is effecting the harm of preventing her from participating in her children's activities. In substance, therefore, Beauchamp's claims relating to the finding of child neglect seek review of the state court's determination on that issue and allege an injury resulting from that finding. The *Rooker-Feldman* doctrine bars such claims.

To the extent that Beauchamp raises other irregularities with the determination, the *Rooker-Feldman* doctrine bars those claims as well. The *Rooker-Feldman* doctrine prohibits

"federal claims that are inextricably intertwined with the state court decisions" such that "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Allstate Ins. Co. v. W. Va. State Bar*, 233 F.3d 813, 818–19 (4th Cir. 2000) (citation and internal quotation marks omitted). Any additional arguments for overturning the child neglect finding that can be gleaned from Beauchamp's pleadings would require the Court to conclude that the ALJ and state courts erred in reaching their decisions. Thus, under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Beauchamp's claims relating to the finding of child neglect and the state proceedings. Those claims are dismissed with prejudice.

## IV. Harassment and False Arrest

Beauchamp also asserts claims centering on alleged fraud, harassment, and false arrest by Crisis Counselor Blair in that she purportedly submitted false information in support of the child neglect investigation and facilitated a false arrest of Beauchamp when she filed a petition for a "peace order" (restraining order) and provided information leading to a petition for an emergency order that resulted in the Prince George's County Sheriff's Department taking Beauchamp to a hospital for a mental health evaluation. Although Beauchamp does not identify a specific cause of action, the Court construes these allegations as asserting constitutional claims under 42 U.S.C. § 1983. Section 1983 allows individuals to sue in federal court any person who violates their federal protected rights while acting under the color of law. 42 U.S.C. § 1983 (2012). For the following reasons, however, these claims are dismissed for failure to state a claim.

### A. Statute of Limitations

As a threshold issue, to the extent that Beauchamp asserts claims based on fraud or harassment based on events prior to August 17, 2011, those claims are barred by the statute of

limitations. Because Section 1983 does not contain its own statute of limitations, courts must draw from the most analogous state law cause of action to determine the appropriate statute of limitations. *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Maryland law provides a general three-year limitations period for civil actions. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2015). Beauchamp alleges that Blair engaged in fraud and harassment against her between 2009 and 2011, beginning in 2009 when she allegedly altered documents fraudulently and faxed them to government officials as part of the child neglect investigation and culminating in August 2011 when she petitioned for a peace order against Beauchamp and allegedly arranged for a false arrest of Beauchamp. Because Beauchamp filed the original Complaint on August 18, 2014, any claims relating to Blair's alleged conduct occurring more than three years earlier is time barred.

The only alleged conduct by Blair that is not time-barred is her submission of a petition for a peace order against Beauchamp and her contribution to a petition for an emergency evaluation of Beauchamp, which Beauchamp characterizes as a causing false arrest. Although Blair filed the petition for a peace order on August 17, 2011, the final day of the three-year limitations period (August 17, 2014) fell on a weekend. Beauchamp satisfied the statute of limitations by filing this action the next workday (August 18, 2014). *See* Fed. R. Civ. P. 6(a) ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). *Cf. Owens*, 767 F.3d at 388 ("Although state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run." (citing *Wallace v.*

14

*Kato*, 549 U.S. 384, 388 (2007))).  Thus, claims relating to the petitions for a peace order and an emergency evaluation are not time-barred.

### B.    Municipal Governments and Officials

To the extent that Beauchamp asserts claims relating to the petitions for a peace order and an emergency evaluation against the City of Greenbelt and McLaughlin or Blair in their official capacities, the claim is dismissed because municipalities and municipal officials are only liable for constitutional violations if the violations occur as a result of a governmental policy or custom.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Beauchamp does not allege that the City of Greenbelt established a policy or custom that caused the alleged false arrest. Rather, Beauchamp seeks to hold the City and the municipal officials liable for the filing of petitions that allegedly resulted in Beauchamp being taken to the hospital for an emergency evaluation, which are isolated incidents.  Because Beauchamp does not claim that the conduct resulted from an expressed or implied government custom or practice, any claims relating to the petitions against the City of Greenbelt, and against McLaughlin and Blair in their official capacities, are therefore dismissed.

To the extent that Beauchamp alleges that McLaughlin is liable in his individual capacity, the claims are also dismissed because there is no allegation that he had any personal involvement in the petitions.  Any claim would be based on his role as a supervisor or manager over others. But there is no respondeat superior or vicarious liability under Section 1983.  *See Iqbal*, 556 U.S. at 676–77.  Accordingly, any such claim is dismissed.

## C.    Qualified Immunity

The only remaining defendant on claims of harassment and false arrest is Blair, the Crisis Counselor who filed a petition for a peace order against Beauchamp on August 17, 2011.  She did not, however, file the petition for an emergency evaluation that resulted in the Sheriff's Department taking Beauchamp to the hospital for an evaluation.  That petition was filed by a police officer.  Defendants claim that Blair is entitled to qualified immunity from these claims.

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013).  "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards*, 178 F.3d at 250) (internal quotation marks omitted).  To overcome a claim of qualified immunity from a Section 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that  a "reasonable official would understand that what he is doing violates that right."  *Id.*  Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citations omitted).  If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

On August 17, 2011, Blair submitted a petition for a peace order in which she alleged that Beauchamp had appeared fully clothed in the shower area where Blair was showering, made

sustained eye contact with Blair, sent emails over several months accusing Blair of various acts, made repeated requests to Blair's employer to take retaliatory actions against her, and had threatened Blair.  In Maryland, an individual may petition a state court for a peace order if she alleges under oath that, within the previous 30 days, she has been subjected to an "act that places the petitioner in fear of imminent serious bodily harm" or another of the enumerated bases for a peace order.  Md. Code Ann., Cts. & Jud. Proc. §§ 3-1503(a)(2), 3-1503(a)(7) (West 2015).  A temporary peace order may only be granted after a hearing and after "a judge finds that there are reasonable grounds to believe that the respondent has committed, and is likely to commit in the future" the acts alleged in the petition.  § 3-1504(a)(1).

That same day, after Blair had appeared before a judge of the District Court for Prince George's County, the court issued a temporary peace order barring Beauchamp from committing or threatening to commit "an act which causes serious bodily harm, an act that places Petitioner in fear of imminent serious bodily harm; assault; rape, attempted rape, sexual offense, or attempted sexual offense; false imprisonment; harassment; stalking; trespass; or malicious destruction of property."  Pl.'s Opp. Ex. 6, at 7.  It also prohibited Beauchamp from contacting or harassing Blair, or entering Blair's residence or place of employment.  A final peace order hearing was scheduled for August 25, 2011, but Blair requested that the petition be dismissed prior to the hearing.

Beauchamp has failed to demonstrate how Blair's filing of the petition, apparently in accordance with the legal requirements, violated any law, let alone a clearly established federal right, especially where court approval was required and granted before any further action. Although the resulting peace order temporarily barred Beauchamp from engaging in threatening behavior toward Blair, she does not have a federal right to engage in such activity.  Beauchamp

certainly has not shown any "clearly established" federal right to be free from a peace order entered by a state judge. Thus, Blair is entitled to qualified immunity on this claim.[4]

To the extent that the claim is based on a false arrest by the Sheriff's Department when it took Beauchamp to a hospital for a court-ordered emergency evaluation, Blair is similarly entitled to qualified immunity. Maryland law provides that any individual may petition for the emergency psychological evaluation of another person "if the petitioner has reason to believe that the individual: (1) Has a mental disorder; and (2) The individual presents a danger to the life or safety of the individual or of others." Md. Code Ann., Health-Gen. § 10-622(a) (West 2015). To safeguard individuals from detention without probable cause, the statute also provides that, when a petition is filed by someone not licensed in the practice of medical or mental health care, "the petitioner shall present the petition to the court for immediate review." § 10-623(a). An emergency evaluation can only be ordered "if the court finds probable cause to believe that the emergency evaluee has shown the symptoms of a mental disorder and that the individual presents a danger to the life or safety of the individual or of others." § 10-623(b).

Here, Blair did not personally detain Beauchamp. Although Beauchamp claims that Blair submitted the petition for an emergency evaluation, the documents she submitted indicate that the petition was actually submitted by a police officer, not Blair. She therefore did not engage in

---

[4] Beauchamp's claim is more akin to a claim for common law abuse of process, which prohibits "the improper use of civil or criminal process in a manner not contemplated by law." *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997) (internal quotation marks omitted). Such a claim, however, would require a showing that Blair did not merely initiate civil proceedings against Beauchamp, but that there was also some "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Id.* (quoting *One Thousand Fleet*, 694 A.2d at 956) (internal quotation marks omitted). Under the facts alleged, Blair did nothing more than file a petition, which would be insufficient to sustain an abuse of process claim. *See id.* (concluding that even a bad faith filing of a petition for a peace order, without more, does not constitute abuse of process).

a false arrest, and she did not submit the equivalent of an affidavit in support of an arrest warrant. Rather, Beauchamp appears to allege that Blair effectively engaged in a false arrest by virtue of the fact that she was a source of information for the officer's petition, which was then evaluated by a state judge and deemed to establish probable cause for the emergency evaluation, and was then executed by law enforcement officials. Beauchamp has not articulated how Blair's conduct in providing information to a law enforcement officer at the beginning of this chain of events constituted a violation of a clearly established federal right. Under these circumstances, the Court will dismiss the claims on qualified immunity grounds.

## V.    The Registry

Beyond her claims for damages, Beauchamp complains about the fact that her name remains on the Registry, which lists perpetrators of child neglect and child abuse, and that there is no means by which one's name can be expunged from the list. The Court construes these allegations as seeking to assert a Section 1983 claim for due process violations. As relief for the alleged violations relating to the Registry, Beauchamp seeks an injunction requiring an "investigation" and "Federal review" of the Registry, including "conven[ing] depositions," and "Justice Department assistance with a Federal Attorney to help the family prosecute this case."[5]

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process has procedural and substantive components. Procedural due process requires states to use fair

---

[5] Claims for injunctive relief are not affected by the qualified immunity of government officials. *Lefemine v. Wideman*, 672 F.3d 292, 303–04 (4th Cir. 2012). Where qualified immunity is asserted, federal injunctive relief is an "extreme remedy" only awarded under Section 1983 if the plaintiff shows "that there is a real or immediate threat that he will be wronged again in a similar way." *Raub v. Campbell*, 785 F.3d 876, 885–86 (4th Cir. 2015) (citation and internal quotation marks omitted).

procedures when they deprive a citizen of a liberty, or property interest, which typically requires "notice and an opportunity to be heard." *Kendall v. Balcerzak*, 650 F.3d 515, 528–29 (4th Cir. 2011) (quoting *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009)). Substantive due process asks whether the substance of the state action is permissible "regardless of the fairness of the procedures" employed. *See Weller v. Dep't of Soc. Servs. for the City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (internal quotation marks omitted).

To the extent that Beauchamp is asserting a procedural due process claim on the basis that she was not afforded adequate means to contest her child neglect designation and to dispute her inclusion on the Registry, she does not present a viable issue for this Court's review. Assuming that she had a liberty interest, it is undisputed that Beauchamp was afforded a full administrative and judicial process to challenge the finding that she was responsible for child neglect, including an initial determination by the agency, review by an ALJ, and review by Maryland state courts up to the Court of Appeals of Maryland. *See Beauchamp v. Prince George's Cnty. Dep't of Soc. Servs.*, No. 0523, slip op. at 5–6. She availed herself of these procedures. That Beauchamp disagrees with the determination does not mean that her procedural due process rights were violated.

To the extent that Beauchamp brings a substantive due process claim that her continued inclusion on the Registry is unconstitutional, she has identified no liberty interest that has been violated. Substantive due process does not prohibit the State from listing Beauchamp's information in the Registry. *See Wildauer v. Frederick Cnty.*, 993 F.2d 369, 373 (4th Cir. 1993) ("The publication of information regarding child abuse or neglect to entities authorized by law to receive such reports does not state a claim under § 1983."). Although Beauchamp claims that the

inability to expunge her entry on the Registry also violates due process, the Fourth Circuit has noted that expungement of an arrest or criminal record is "a discretionary function of the court, rarely utilized absent extreme circumstances," and that even though arrest and criminal records are "matters of public record, easily obtained upon request," there is "no automatic right to expun[gement]" of such records even when the individual's name has been cleared. *See Hodge v. Jones*, 31 F.3d 157, 166 (4th Cir. 1994). Accordingly, the *Hodge* court held that there was no due process violation arising from the failure to expunge a report of a child neglect investigation where the allegations proved to be unsubstantiated. *Id.* at 166–67. Here, there was a finding of child neglect that was later affirmed by the Maryland state courts, including the Maryland Court of Special Appeals, and there is a statutory mechanism by which findings are removed from the Registry after seven years. *See* Md. Code Ann., Fam. Law § 5-714(e)(2) (West 2015) ("The Department without the necessity of a request shall remove from the name of an individual . . . the identification of that individual as responsible for abuse or neglect if no entry has been made for that individual for 7 years after the entry of the individual's name in a registry.").

Although Beauchamp asserts that her continued presence on the Registry has cost her a federal security clearance, as well as the ability to volunteer in her children's school and community activities, the *Hodge* court rejected the claim that impact on a security clearance constituted a property interest that would support a due process claim based on the failure to expunge a child neglect investigative report. *Hodge*, 31 F.3d at 165. Under these circumstances, there is no cognizable due process claim relating to the inability of Beauchamp to have her name removed from the Registry. Beauchamp's due process claims relating to the Registry are therefore dismissed for failure to state a claim. Because the Court does not find a viable due

process claim, it need not address whether it would have the authority to order the Justice Department or another federal agency to conduct an investigation or review of the Registry.

## VI.    Remaining Motions

In the Motion for Leave, Beauchamp requests (1) an extension of time to file a response to Defendants' memoranda in reply to her opposition to their Motions to Dismiss, and (2) access to the Court's electronic case filing system.  Beauchamp's first request is for leave to file an additional memorandum even though the Motions to Dismiss are fully briefed.  The Court construes the request as a motion for leave to file a surreply.  "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  Local Rule 105.2(a) (D. Md. 2014). Surreply briefs are permitted when "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Here, Defendants' reply briefs reiterate the arguments that they made in support of the Motions to Dismiss and respond directly to the arguments raised in Beauchamp's memorandum in opposition.   Because Defendants raise no new issues, Beauchamp's request for leave to file a surreply brief is denied.  Having dismissed all of Beauchamp's claims against Defendants, the Court dismisses as moot Beauchamp's second request, for access to the electronic court filing system.

In the Motion to Compel, Beauchamp asks the Court to require Defendants to participate in depositions and other forms of discovery.  Discovery, including depositions, may not commence until the Court issues a scheduling order.  *See* Local Rule 104.4.  Beauchamp's Motion was untimely because the Court has not issued a scheduling order in this case. Nevertheless, because all claims have been dismissed against the Defendants, the Motion to Compel is dismissed as moot.

## CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss, ECF No. 14, and the Greenbelt Defendants' Motion to Dismiss, ECF No. 15, are GRANTED. Beauchamp's Motion for Leave ECF No. 33, is DENIED, as to leave to file a surreply brief and DISMISSED AS MOOT as to access to the electronic case management system. Beauchamp's Motion to Compel, ECF No. 35, is DISMISSED AS MOOT. A separate Order follows.

Date: July 13, 2015

THEODORE D. CHUANG
United States District Judge